**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| WILLIAM K. KIGER, II | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 04-1388 |
| | ) | |
| v. | ) | |
| | ) | Judge David S. Cercone |
| ALLEGHENY COUNTY AIRPORT | ) | Magistrate Judge Lisa Pupo Lenihan |
| AUTHORITY, and STEPHANIE L. | ) | |
| SARACCO, | ) | Re: Doc. No. 9 |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

## I.     RECOMMENDATION

It is respectfully recommended that Defendants' Motion to Dismiss at Doc. No. 9 be granted in part and denied in part.  Specifically, it is recommended that Defendants' Motion to Dismiss Plaintiff's claims pursuant to the ADA and for punitive damages be denied.  Further, it is recommended that Defendants' Motion to Dismiss Plaintiff's claims pursuant to § 1983 for violation of the Fourteenth Amendment Due Process clause, breach of contract, violation of Pennsylvania Local Agency Act, wrongful discharge, the Equal Protection clause, and the Ninth Amendment be granted.  It is also respectfully recommended that Defendants' Motion to Dismiss at Doc. No. 9, relating to judicial estoppel, be converted to a Motion for Summary Judgment and denied.

## II.     REPORT

A.     Facts

_____Plaintiff, William K. Kiger, II, (hereinafter "Plaintiff") began working for the Defendant Allegheny County Airport Authority (hereinafter "Defendant Airport Authority") as a Full-Time Assistant Operations Maintenance Supervisor on August 31, 1992. (Amended Complaint ¶ 11.) The Assistant Operations Maintenance Supervisor position was replaced with the Operation Coordinator position on May 30, 2002. (Amended Complaint ¶ 11.) Plaintiff avers that he was qualified for both of these positions and performed in an "excellent manner" from his date of hire until his discharge on May 6, 2003. (Amended Complaint ¶ 11.) Plaintiff further avers that throughout his employment, "Defendant Airport Authority adopted, maintained and implemented a policy and/or an Employee Handbook and/or Manual which included just cause provisions regarding discipline and /or discharge." (Amended Complaint ¶ 11.)

While employed by Defendant Airport Authority, Plaintiff was diagnosed with Focal Glumerial Sclerosis, a kidney disease "which substantially limits Plaintiff's ability to cleanse and eliminate body waste and which causes fatigue and energy loss." (Amended Complaint ¶ 12.) Plaintiff states that "[t]he treatment for this disorder requires medication, with side effects of loss of energy and stamina," and consequently, "Plaintiff requires a consistent work schedule." (Amended Complaint ¶ 12.) Plaintiff further avers that he informed Defendant Airport Authority and his direct supervisor, Defendant Stephanie L. Saracco (hereinafter "Defendant Saracco") of his medical condition and requested a shift scheduling change. (Amended Complaint ¶¶ 10, 13.) Plaintiff alleges that Defendant Saracco "verbally indicated . . . that the shift schedule accommodation could probably be worked out." (Amended Complaint ¶ 14.)

2

Thereafter, Plaintiff claims that "Defendant Airport Authority did not provide the requested reasonable accommodation of a change in schedule" and as a result thereof, "plaintiff was late for or missed work time due to his permanent medical condition and the side effects of the medication and was issued written reprimands for missed work time." (Amended Complaint ¶ 16.) After receiving no feedback from Defendant Airport Authority regarding the requested shift scheduling change, and after receiving various reprimands, Plaintiff "reasonably believed" that Defendant Airport Authority and Defendant Saracco intended to terminate his employment in accordance with the terms of possible penalties set forth in certain reprimands. (Amended Complaint ¶¶ 17-20.)

Consequently, Plaintiff avers that he "felt compelled, in an effort to protect himself from what he feared to be a termination based upon his physical disability, to file a Family Medical Leave Act ("FMLA") Request which he submitted on August 29, 2002." (Amended Complaint ¶ 21.) Defendant Airport Authority did grant the medical leave, extended the leave, but "never offered the requested reasonable accommodation of a schedule change." (Amended Complaint ¶ 22.) Defendant Airport Authority thereafter terminated Plaintiff's employment by certified mail correspondence on May 6, 2003. (Amended Complaint ¶ 23.) After satisfying "the procedural and administrative requirements set forth in Section 107 of the ADA," Plaintiff filed his Complaint in federal court within 90 days of receipt of the Notice of Right to Sue. (Amended Complaint ¶ 5.)

Plaintiff's Amended Complaint presently before this Court contains seven (7) counts. Count I, against the Airport Authority only, attempts to make out a claim pursuant to the Americans with Disabilities Act (ADA), and the failure to provide reasonable accommodation.

3

(Amended Complaint ¶¶ 24-35.)

Count II, entitled "Violation of Civil Rights, 42 U.S.C. § 1983 Due Process and Wrongful Termination," names Defendant Airport Authority only.  Here, Plaintiff avers that Defendant Airport Authority deprived Plaintiff of his due process rights and "his rights under the First, Fifth, Ninth and Fourteenth Amendments."  Specifically, Plaintiff alleges that he has a "fundamental right and a legitimate property interest in continuing his employment . . .where Defendant Airport Authority adopted, maintained and implemented a policy and/or an Employee Handbook and/or Manual which included just cause provisions regarding discipline and/or discharge."  (Amended Complaint ¶¶ 36-42.)  Plaintiff continues that "Plaintiff's property interest in his employment, as established by the aforesaid 'just cause' provisions, was wrongfully terminated by a practice utilized by Defendant Airport Authority that is clearly contrary to a mandated public policy and in violation of the Federal Americans with Disabilities Act."  (Amended Complaint ¶ 40.)

Count III, entitled "Violation of Civil Rights, 42 U.S.C. § 1983 for Wrongful Termination," names both Defendants.  Plaintiff avers that pursuant to the First and Fourteenth Amendments, he "has a right to participate in political elections, and to support candidates based upon his own personal preferences."  (Amended Complaint ¶ 44.)  More specifically, Plaintiff avers that he is a registered Democrat, and that he "served as Chairman of the Democratic Committee of the Borough of Lincoln, actively supported and campaigned for local, County and Statewide Democratic candidates for political office" and was hired by Defendant Airport Authority when the Allegheny County Board of Commissioners were controlled by Democratic candidates.  (Amended Complaint ¶ 47.)  Further, Plaintiff avers that Defendant Supervisor

4

Saracco is a registered Republican, and, knowing of Plaintiff's political activities, "targeted

Plaintiff for discipline and/or discharge based upon his political association."  Plaintiff's position

after his termination, avers Plaintiff, was filled by a registered Republican.  (Amended Complaint

¶ 55.)  Plaintiff claims that Defendants have denied him his due process rights, and "his rights

under the First, Fifth, Ninth and Fourteenth Amendments to the United States Constitution in

violation of 42 U.S.C. §§ [sic] 1983."  (Amended Complaint ¶ 45.)

Count IV, entitled "Equal Protection" names both Defendants.  Specifically,

Plaintiff avers that "Defendants treated Plaintiff differently from other Airport Authority

employees similarly situated," and that "[t]his different treatment was arbitrary."  (Amended

Complaint ¶ 59.)  Plaintiff continues that "Defendants deprived Plaintiff of equal protection of

the law without a rational basis" and "[n]o rational basis exists for terminating Airport Authority

employees because of their political affiliation . . .."  (Amended Complaint ¶¶ 60, 62.)  In

addition, Plaintiff avers that "Plaintiff's claim under the Equal Protection Clause is rationally and

reasonably based on Defendant Airport Authority's refusal to accommodate his protected

disability while doing so for other employees, similarly situated."  (Amended Complaint ¶ 61.)

Count V against Defendant Airport Authority only, attempts to make out a claim

for breach of contract pursuant to state law, in violation of the terms of Defendant Airport

Authority's Employee Handbook/Manual, public policy, and due process in failing to provide

Plaintiff with a post-termination opportunity to respond or "due process of law."  (Amended

Complaint ¶¶ 66- 68.)

Count VI, naming both Defendants, attempts to make out a claim for violation of

the Pennsylvania Local Agency Act.  Plaintiff claims that his termination was in violation of the

Local Agency Act as "Defendants did not provide Plaintiff with any pre or post-termination

hearing or due process of law."  (Amended Complaint ¶ 71.)

Finally, Count VII, naming both Defendants and entitled "wrongful discharge,"

states that Plaintiff's termination "constitutes a wrongful discharge under Pennsylvania law, the

Americans with Disabilities Act, the First, Fifth, Ninth and Fourteenth Amendments, . . . and the

Equal Protection Clause and the Privileges and Immunities Clause of Article IV . . . and 42

U.S.C. § 1983, in violation of public policy."  (Amended Complaint ¶ 74.)


B.    Legal Standard

In ruling on a motion to dismiss filed pursuant to Rule 12(b)(6), the court is

required to accept as true all allegations made in the complaint and all reasonable inferences that

can be drawn therefrom, and to view them in the light most favorable to the plaintiff.  See Blaw

Knox Ret. Income Plan v. White Consol. Indus., Inc., 998 F.2d 1185, 1188 (3d Cir. 1993); Ditri

v. Coldwell Banker, 954 F.2d 869, 871 (3d Cir. 1992).  The issue is not whether the plaintiff will

ultimately prevail, but rather whether he can support his claim by proving any set of facts that

would entitle him to relief.  See Hishon v. King & Spalding, 467 U.S. 69 (1984).  Dismissal is

appropriate "only if it is clear that no relief could be granted under any set of facts that could be

proven consistent with the allegations."  See Port Authority of New York and New Jersey v.

Arcadian Corp., 189 F.3d 305, 311 (3d Cir. 1999).

Courts generally consider only the allegations of the complaint, attached exhibits,

and matters of public record in deciding motions to dismiss.  Pension Benefit Guar. v. White

Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).  Factual allegations within documents

described or identified in the complaint may also be considered if the plaintiff's claims are based

upon those documents. Id.  Moreover, a court may consider documents attached as exhibits to a

defendant's motion to dismiss if the plaintiff's claims are based on the documents, and they are

undisputedly authentic. Id.  "Otherwise, a plaintiff with a legally deficient claim could survive a

motion to dismiss simply by failing to attach a dispositive document on which it relied." Id.

(citing Goodwin v. Elkins & Co., 730 F.2d 99, 113 (3d Cir. 1984) (Becker, J., concurring)).  A

district court may consider these documents without converting a motion to dismiss into a

motion for summary judgment.  In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426

(3d Cir. 1997).

        In support of their Motion to Dismiss Plaintiff's Amended Complaint pursuant to

Fed. R. Civ. P. 12(b)(6), Defendants argue the following: 1) Plaintiff cannot show that he is a

"qualified individual with a disability" under the ADA because a) Plaintiff admitted that he was

unable to perform the functions of his job in his request for FMLA leave, and indicated in his

EEOC filings that he was unable to work the turn around shift once a week, b) "Plaintiff should

be judicially estopped from asserting that he is a qualified individual with a disability" as he had

signed a statement on a form relating to short-term disability benefits stating that his medical

condition prevented him from working, and in filing his claim for unemployment compensation

benefits, Plaintiff indicated he "was not able and available for work due to his low energy level,"[1]

---

[1]As to their judicial estoppel argument relating to Plaintiff's ADA claim only, Defendants
contend that their Motion to Dismiss should be converted to a Motion for Summary Judgment in
that their judicial estoppel argument will require this Court to consider matters outside the
Amended Complaint including Plaintiff's application for receipt of disability benefits and
Plaintiff's claim for unemployment compensation benefits.  (Defendants' Brief in Support of
Motion to Dismiss Amended Complaint Pursuant to Fed. R. Civ. P. 12 (b)(6), Doc. No. 10 n.2;
Defendants' Reply to Plaintiff's Brief in Opposition to Defendants' Motion to Dismiss Amended

c) Plaintiff's own allegations establish that he was unable to perform the essential functions of his job including punctuality and regular attendance; 2) Plaintiff's § 1983 claims and Pennsylvania state law claims relating to his discharge should be dismissed because Plaintiff was an at-will employee and had no protected property interest in his employment; 3) the Amended Complaint fails to state a claim for wrongful discharge pursuant to Pennsylvania law; 4) even if Plaintiff's allegations are sufficient to show that his discharge violated public policy, his wrongful discharge claim is barred by the Political Subdivision Tort Claims Act; 5) the Amended Complaint fails to state a claim pursuant to the Equal Protection clause in that the Equal Protection clause creates no substantive rights, but is directed to the validity of classifications created by state laws; 6) the Amended Complaint fails to state a claim pursuant to the Ninth Amendment as the Ninth Amendment confers no substantive rights; 7) Plaintiff's claims for punitive damages should be dismissed as such damages are not available against government agencies.

Plaintiff, in opposition to Defendants' Motion to Dismiss, argues the following: 1) the Amended Complaint does state a cause of action under the ADA because a) Plaintiff's averments establish his ability to perform the essential functions of his job with reasonable accommodation, b) principles of judicial estoppel are not properly raised by Defendants, and if considered by the Court, do not support dismissal of the ADA claim, 2) Plaintiff has stated a claim pursuant to the First and Fourteenth Amendments in that he was discharged because of his

---

Complaint, Doc. No. 14 n.1.)  In his responsive brief, Plaintiff has attached a copy of the January 9, 2004 Opinion of the Commonwealth Court of Pennsylvania regarding Plaintiff's unemployment compensation claim.  (Plaintiff's Brief in Opposition to Motion to Dismiss Amended Complaint, Doc. No. 13, pp.9-13 & Exhibit 1.)

political party affiliation and whether Plaintiff was a contractual or an at-will employee has no relevance to this analysis; 3) Defendant's qualified immunity arguments must fail as defendants violated Plaintiff's clearly established right of which a reasonable person would have known that public employees cannot be fired for their political affiliations; 4) Plaintiff is entitled to punitive damages as Defendant Airport Authority is a separate and freestanding authority whose revenue is generated primarily from the use of the facility, not tax revenue.  Further, a plaintiff is entitled to punitive damages where a public official should have known of constitutionally protected rights and acted in conscious disregard of them to the detriment of plaintiff; 5) Plaintiff has stated a claim for breach of contract, wrongful discharge, and violation of Local Agency Law.

C.   Analysis

1.   ADA

The ADA forbids employers from "discriminat[ing] against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a).  To make out a claim for employment discrimination under the ADA, Plaintiff must show that he "(1) has a 'disability'[2] (2) is a 'qualified individual' and (3) has suffered an adverse employment action because of that disability."  Deane v. Pocono Medical Ctr., 142 F.3d 138, 142 (3d Cir.

---

[2]Under the ADA, a "disability" is defined as: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment."  42 U.S.C. § 12102(2); 29 C.F.R. § 1630.2(g).

1998) (citing <u>Gaul v. Lucent Techs., Inc.</u>, 134 F.3d 576, 580 (3d Cir. 1998)).  A "qualified individual with a disability" is "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."  42 U.S.C. § 12111(8).  The EEOC regulations regarding whether one is a qualified individual require a two part analysis: "(1) whether the individual has the requisite skill, experience, education and other job-related requirements of the position sought, and (2) whether the individual, with or without reasonable accommodation,[3] can perform the essential functions of that position."  <u>Buskirk v. Apollo Metals</u>, 307 F.3d 160, 168 (3d Cir. 2002) (citing 29 C.F.R. § 1630.2(m)).

Here, Defendants argue that Plaintiff has failed to state a cause of action pursuant to the second prong of the "qualified individual" analysis because he has referenced documents in his Amended Complaint, including his FMLA request form, and his EEOC charge, wherein he indicated that he could not perform all functions of his position, and in pleading that he was late for work or missed work due to his medical condition.  Further, Defendants argue that Plaintiff made assertions relating to his claims for short-term disability and unemployment compensation benefits, and that these assertions are inconsistent with his ADA claim.  Defendants note that their arguments relating to Plaintiff's claims for short-term disability and unemployment compensations benefits relate to matters outside the pleadings, and, therefore, the Motion to

---

[3]"Reasonable accommodation," as defined by the ADA, means measures such as "job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment devices, . . . and other similar accommodations for individuals with disabilities."  42 U.S.C. § 12111(9)(B).

Dismiss on these issues should be converted to a Motion for Summary Judgment.[4]  In response, Plaintiff contends that Defendants have taken his statements out of context.  Further, Plaintiff states that he opposes Defendants' request to convert the judicial estoppel issue into a Motion for Summary Judgment and thereafter, arguing in the alternative, presents facts and legal arguments as to why judicial estoppel does not apply to the case at bar.

a.  Plaintiff's alleged admissions in the FMLA and EEOC forms

In his application under the FMLA, Plaintiff completed a pre-printed form.  (See Exhibit E to Brief in Support of Motion to Dismiss, Doc. # 10.)  A section of the form, entitled "Reason for Leave," provides four (4) preprinted choices for the applicant as to why he/she is requesting leave.  Plaintiff asserts in his responsive brief that the box he checked, "Serious health condition that makes me, the employee, unable to perform the functions of my position," was the only option of those presented that was at all close to his circumstances.  Consequently, he checked that box.  (Brief in Opposition to Motion to Dismiss Amended Complaint, Doc. # 13 at 6-7.)  As noted by the Plaintiff, the FMLA form makes no reference to "essential" functions of the position nor to "reasonable accommodations."

Further, in Plaintiff's EEOC charge, Plaintiff provides a narrative indicating in relevant part as follows:

_____

[4]Fed. R. Civ. P. 12 (b) provides in relevant part:

> If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

Fed. R. Civ. P. 12 (b).

1.  I was denied a reasonable accommodation for my disability.  Because the accommodation was denied I was forced to take a medical leave of absence beginning on or about August 29, 2002.  Several times between August 29, 2002 and May 6, 2003, I requested to return to work with an accommodation.  No accommodation was ever provided.  I was terminated from my position of Operations Coordinator on or about May 6, 2003.

. . .

3.  I believe that the Respondent discriminated against me because of my disability in violation of the Americans with Disabilities Act, in that, I was able to perform all of the duties of my job, except for working the turn around shift once a week.  Because the Respondent refused to grant me an accommodation, I was required to take a leave of absence beginning in August 2002.

(Exhibit I to Brief in Support of Motion to Dismiss, Doc. # 10.)

When placed in their respective contexts, these statements do not conflict with the averments in Plaintiff's Amended Complaint.  In fact, these statements support Plaintiff's averments that he was able to perform the essential functions of his job.  Therefore, it is recommended that Defendants' Motion to Dismiss on this issue be denied.

b.  <u>Plaintiff's averments relating to punctuality and missed work</u>

Defendants argue that Plaintiff's averments in Paragraph 16 of his Amended Complaint establish that he was not "qualified" as he was unable to perform the essential functions of punctuality and regular attendance.  Specifically, Defendants highlight only a portion of Paragraph 16.  Paragraph 16, in its entirety, provides as follows: "<u>As a result of the failure to implement the accommodation of a schedule change</u>, Plaintiff was late for or missed work time due to his permanent medical condition and the side effects of the medication and was issued written reprimands for missed work time."  (Amended Complaint ¶ 16.) (emphasis added).  Further, Paragraph 11 provides in relevant part that "Plaintiff was qualified for the position of Full-Time Assistant Operations Maintenance Supervisor and Operations Coordinator and

performed those duties in an excellent manner from the time of hire through his discharge on

May 6, 2003.  (Amended Complaint ¶ 11.)  In addition, in paragraph 28, Plaintiff avers that he

was a "qualified individual with a disability" as he "could perform all the essential requirements

of his employment, including regular and consistent attendance, with a reasonable

accommodation in the form of a shift schedule change."  (Amended Complaint ¶ 28.) (emphasis

added).  Here, Plaintiff's averments concerning punctuality and missed work relate to

Defendants' refusal to grant Plaintiff's requested accommodation.

Further, paragraph 32 also sets forth that Plaintiff's missed work time was related

to Defendants' failure to grant the requested shift schedule accommodation:

> 32.  Further, although Defendant Supervisor, on behalf of Defendant Airport
> Authority, indicated to Plaintiff that a schedule change would be possible, rather
> than granting this reasonable request, Defendant Supervisor, on behalf of
> Defendant Airport Authority, reprimanded Plaintiff for missed work time,
> knowing that the missed time was caused by the medical condition as Plaintiff had
> reported to Defendants, thereby compelling Plaintiff, in an effort to protect
> himself from what be [sic] feared to be a termination based upon his physical
> disability, to file a Family Medical Leave Act (FMLA) Request and remain on the
> FMLA Leave because Defendant Airport Authority refused to grant the shift
> change accommodation request.  Plaintiff was, at all times material to his cause of
> action, ready, willing and able to return from his FMLA Leave to his position as
> Assistant Operations Coordinator if Defendant Airport Authority would have
> implemented his shift change accommodation request.

(Amended Complaint ¶ 32.)

Clearly, when placed in the context of the entire Complaint, Plaintiff's averments

relating to punctuality and missed work time relate to Defendants' failure to grant Plaintiff's

request for reasonable accommodation in the nature of a shift schedule change.  When all facts of

the Amended Complaint are taken as true, and granting Plaintiff every favorable inference that

can be drawn therefrom, and viewing them in the light most favorable to Plaintiff, Plaintiff has

pled facts sufficient to demonstrate that he was a qualified individual under the ADA.  Therefore, it is recommended that Defendants' Motion to Dismiss on this issue be denied.

c.  <u>Judicial estoppel relating to Plaintiff's claims for short-term disability and unemployment compensation benefits</u>

Next, Defendants point to statements made by Plaintiff relating to his claims for short-term disability and unemployment compensation benefits.  Defendants argue that Plaintiff should be judicially estopped from asserting that he is a qualified individual with a disability because of his following statements:  1) a statement on a "Short Term Disability Attending Physician's Statement" (Exhibit G to Brief in Support of Motion to Dismiss, Doc. # 10) that his medical condition prevented him from working on December 27, 2002; and 2) Plaintiff's statement reflected in an Unemployment Compensation Referee's Findings of Fact that Plaintiff was "not able and available for work due to his low energy level."  (Exhibit H to Brief in Support of Motion to Dismiss, Doc. # 10.)

In raising these arguments, Defendants have presented matters outside the pleadings and request that this Court convert their Motion to Dismiss on this issue into a Motion for Summary Judgment.  Plaintiff objects to Defendants' request and thereafter, without waiving such objection, presents detailed argument as to why judicial estoppel is not applicable.  Because this Court shall not exclude the matters presented outside the pleadings, Defendants' Motion to Dismiss Plaintiff's ADA claim as it relates to Plaintiff's statements concerning short-term disability and unemployment compensation benefits only, "shall be treated as one for summary judgment and disposed of as provided in Rule 56 . . .."  Fed. R. Civ. P. 12 (b).

Summary judgment is appropriate if, drawing all inferences in favor of the

nonmoving party, "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (c). Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's case, and for which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of identifying evidence which demonstrates the absence of a genuine issue of material fact. Once that burden has been met, the nonmoving party must set forth "specific facts showing that there is a genuine issue for trial" or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law. Matsushita Elec. Indus. Corp. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting Fed.R.Civ.P. 56(e) (emphasis added by Matsushita Court). An issue is genuine only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty-Lobby, Inc., 477 U.S. 242, 248 (1986). While any evidence used to support a motion for summary judgment must be admissible, it is not necessary for it to be in admissible form. See Fed.R.Civ.P. 56 (e); Celotex Corp., 477 U.S. at 324; J.F. Feeser,Inc., v. Serv-A-Portion, Inc., 909 F.2d 1524,1542 (3d Cir. 1990).

In Cleveland v. Policy Mgmt. Sys. Corp., the United States Supreme Court refused to apply judicial estoppel in a case where an ADA plaintiff had previously pursued and obtained social security disability benefits. 526 U.S. 795, 797-98 (1999). Although "seemingly divergent," the Court stated that these two statutory schemes are often consistent and a recipient of social security disability benefits is not automatically estopped from pursuing an ADA claim. Similarly, the law does not "erect a strong presumption against the recipient's success under the

ADA." Id.

Yet, "an ADA Plaintiff cannot simply ignore her . . . contention that she was too disabled to work." Id. at 798.  The Court in Cleveland stated that to survive a motion for summary judgment, an ADA plaintiff must proffer reasons as to why her contentions of disability in the context of a social security disability proceeding are consistent with her ADA claim that she could "perform the essential functions" of her job.  Id.  Specifically, the Court articulated the following with regard to an ADA plaintiff's burden in defeating a motion for summary judgment:

> When faced with a plaintiff's previous sworn statement asserting "total disability" or the like, the court should require an explanation of any apparent inconsistency with the necessary elements of an ADA claim.  To defeat summary judgment, that explanation must be sufficient to warrant a reasonable juror's concluding that, assuming the truth of, or the plaintiff's good-faith belief in, the earlier statement, the plaintiff could nonetheless "perform the essential functions" of her job, with or without "reasonable accommodation."

Id. at 807.

Here, in his responsive brief at Doc. # 13, Plaintiff presents several reasons as to why these statements relating to his short-term disability and unemployment compensation benefits claims are consistent with his ADA claim that he can "perform the essential functions" of his job.  First, as to his claim for unemployment compensation benefits, Plaintiff notes that the Referee's Findings of Fact referenced in Defendants' Brief was not the final decision on Plaintiff's unemployment compensation claim.  Instead, on January 9, 2004, the Commonwealth Court vacated and remanded the case for further proceedings.  Plaintiff attaches this January 9, 2004 Opinion to his Brief in Opposition at Doc. # 13, and highlights the following testimony by Plaintiff at the hearing before the Referee as set out in the Opinion of the Commonwealth Court:

16

Claimant testified that he was able to work regular, eight-hour shifts and that working such a steady shift would not be a problem; however, he stated that he could not work sixteen-hour days as he did in the past given his medical limitations.  In explaining why his initial application for benefits stated that he was unavailable to work, Claimant stated that the questions were "narrow," many of the required responses were limited to "yes" or "no" answers, and the opportunity to expound on his responses was limited.  He explained that the reason he responded that he could only work on a limited basis was because he could not work the sixteen-hour shift that occurred each week when his shift changed.

(Brief in Opposition to Motion to Dismiss Amended Complaint, Doc. # 13 at Exhibit 1, pp.4-5.)

Clearly, Plaintiff's statements as reflected in the January 9, 2004 Opinion are consistent with his ADA claim that he can "perform the essential functions" of his job with the reasonable accommodation of a shift schedule change.

Regarding the statement relating to his claim for short-term disability benefits, Plaintiff relies on the United States Supreme Court's analysis in Cleveland, discussed supra. Specifically, Plaintiff argues that, as in Cleveland, the case at bar presents another instance where an ADA claim and a social security disability claim "can comfortably exist side by side."  See Cleveland, 526 U.S. at 802-03.  That is, when the Social Security Administration determines whether an individual is disabled for purposes of receiving benefits, "it does not take the possibility of 'reasonable accommodation' into account, nor need an applicant refer to the possibility of reasonable accommodation when [applying for social security benefits.]" Id. at 803 (emphasis in original).  Plaintiff notes that like the FMLA application, the short-term disability application he filed contained no provision for indicating an ability to work if a reasonable accommodation were provided.  Further, Plaintiff argues that throughout his Amended Complaint, he has consistently stated his position that with a shift schedule change

17

accommodation, he is able to work.  Plaintiff proffers as follows:

> It is Defendants' refusal to provide this accommodation that renders Plaintiff, because of his disability, eligible for the benefits he received.  Even as of this date, if Defendants would simply provide the reasonable accommodation, Plaintiff would immediately return to his position and demonstrate his ongoing ability to perform the essential functions of his job.

(Brief in Opposition to Motion to Dismiss Amended Complaint, Doc. # 13 at 13.)

Here, Plaintiff has provided explanations sufficient to demonstrate that his claims for unemployment compensation and short-term disability benefits are consistent with his ADA claim that he could "perform the essential functions" of his job.  Consequently, the principle of judicial estoppel is inapplicable to the case at bar.  Therefore, it is recommended that Defendants' Motion for Summary Judgment on this issue be denied.

      2.    <u>Section 1983 and Pennsylvania State Law Claims relating to Plaintiff's Discharge</u>

Here, Defendants challenge the following Counts of Plaintiff's Amended Complaint relating to his discharge:

a.  Count II for violation of the Fourteenth Amendment Due Process clause pursuant to 42 U.S.C. § 1983;

b.  Count V for breach of contract under Pennsylvania law;

c.  Count VI for violation of the Pennsylvania Local Agency Act, 2 Pa. Cons. Stat. § 551 et. seq.; and

d.  Count VII for wrongful discharge under Pennsylvania law.

a.  <u>Count II for Violation of the Fourteenth Amendment Due Process</u>

Clause pursuant to 42 U.S.C. § 1983

Section 1983 of the Civil Rights Act provides as follows:

> Every person who, under color of any statute, ordinance, regulation,
> custom, or usage of any State or Territory or the District of Columbia, subjects, or
> causes to be subjected, any citizen of the United States or any other person within
> the jurisdiction thereof to the deprivation of any rights, privileges, or immunities
> secured by the Constitution and laws, shall be liable to the party injured in an
> action at law, suit in equity, or other proper proceeding for redress . . ..

42 U.S.C. § 1983.  Thus, to state a claim for relief under this provision, the plaintiff must

demonstrate that the conduct in the complaint was committed by a person or entity acting under

color of state law and that such conduct deprived the plaintiff of rights, privileges or immunities

secured by the Constitution or the laws of the United States.  Piecknick v. Commonwealth of

Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

In Count II of Plaintiff's Amended Complaint, Plaintiff avers that "Defendant

Airport Authority adopted, maintained and implemented a policy and/or an Employee Handbook

and/or Manual which included just cause provisions regarding discipline and/or discharge."

(Amended Complaint ¶ 40.)  Plaintiff continues that his "property interest in his employment"

was established by these "just cause" provisions and that his property interest in his employment

"was wrongfully terminated . . .."  (Amended Complaint ¶ 40.)

Defendants argue that Plaintiff was an at-will employee, and consequently, did not

have a protected property interest in his employment.

Plaintiff responds that Defendants are incorrect in their contention that without a

protected property interest in Plaintiff's employment, there can be no constitutional deprivation.

Plaintiff argues that he has established his right to constitutional protection in Count III of the

19

Amended Complaint for violation of his First Amendment right to political association.[5]

In relevant part, section one of the Fourteenth Amendment to the United States Constitution provides that no state shall "deprive any person of like, liberty, or property, without due process of law . . .." U.S. CONST. amend. XIV, § 1.  The Fourteenth Amendment requires that any deprivation of life, liberty or property be preceded by "notice and opportunity for a hearing appropriate to the nature of the case."  Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985).  In assessing whether Plaintiff has stated a procedural due process violation, this Court must determine whether Plaintiff has a constitutionally protected property interest in his employment, and if so, whether Plaintiff received all process that was due.  See Logan v. Zimmerman Brush Co., 455 U.S. 422, 428 (1982).  Property interests "are not created by the Constitution.  Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law."  Board of Regents v. Roth, 408 U.S. 564, 577 (1972).

Pennsylvania state law is clear that Plaintiff does not have a protected property interest in his employment, and therefore, he cannot invoke the protections of the Due Process clause of the Fourteenth Amendment.  "As a rule, public employees in Pennsylvania have at-will status and are subject to summary removal by the employing agency."  Cooley v. Pa. Housing Finance Agency, 830 F.2d 469, 471 (3d Cir. 1987), abrogated on other grounds by Foster v.

---

[5]Plaintiff spends a considerable portion of his responsive brief arguing the merits of his political association claim in Count III although Defendants have not moved to dismiss Count III. Plaintiff has not responded to Defendants' arguments concerning his § 1983 Due Process claim and whether Plaintiff can establish a protected property interest in his employment under Pennsylvania law.

Chesapeake Ins. Co., 933 F.2d 1207 (3d Cir. 1991).  In Pennsylvania, a public employee must

show that the hiring agency had a specific statutory authority to create a property interest in

public employment.  Cooley, 830 F.2d at 471; Scott v. Philadelphia Parking Auth., 166 A.2d

278, 281 (Pa. 1961).  In the absence of such enabling legislation, any contract created by the

hiring agency with the public employee is invalid and unenforceable.  Scott, 166 A.2d at 282.

The legislation must state specifically that the public agency has the power to contract for tenured

employment in order to create a property interest.  See e.g., 71 Pa. Con. Stat. Ann. §§ 741.1-

741.1005 ("Civil Service Act"); 43 Pa. Cons. Stat. Ann. §§ 1101.101-1101.2301 ("Public

Employees Relations Act"); 24 Pa. Con. Stat. Ann. §§ 11--1121-11--1141 ("Teachers Tenure

Acts").  More specifically, Pennsylvania state and federal courts have held that absent this

precise and specific legislation, provisions in employee handbooks and manuals will not override

the employment at-will status of public employees.  See Cooley, 830 F.2d at 472-73 (no specific

legislation permitted agency to enter employment contracts with its employees; employee manual

served only as guidelines for employees) (discussing Pivarnik v. Commonwealth, Dep't of

Transp., 474 A.2d 732 (Pa. Commw. 1984) (employee handbook not legislative enactment

conferring contract right of continued employment)).

       Plaintiff has not pled the existence of any enabling legislation that would serve to

override his employee at-will status.  Further, an analysis of the Employee Handbook and /or

Manual described in Plaintiff's Complaint is unnecessary absent precise and specific enabling

legislation; any contract created in the absence of such legislation is invalid and unenforceable.

See Scott, 166 A.2d at 282.  Therefore, Plaintiff's arguments concerning the propriety of ruling

on Defendants' Motion to Dismiss without benefit of additional discovery concerning the

employment relationship between Plaintiff and Defendants are inapposite.[6]  See  generally Short

v. Lawrenceville, 696 A.2d 1158 (Pa. 1997) (citing Stumpp v. Stroudsburg Mun. Auth., 658

A.2d 333, 334-35 (Pa. 1995), and Imdorf v. Public School Employes' Ret. Sys., 638 A.2d 502,

505 (Pa. Cmmw. 1994)) (absent enabling legislation, public agencies have no power to contract

away right of summary dismissal; employee handbook issued by agency cannot guarantee

property right in employment absent such enabling legislation).

Consequently, because Plaintiff does not have a property interest in his

employment, a Due Process analysis is not applicable to the facts at bar and Plaintiff's § 1983

claim should be dismissed.

Therefore, it is respectfully recommended that Defendants' Motion to Dismiss

Count II of Plaintiff's Amended Complaint for violation of the Fourteenth Amendment Due

Process clause pursuant to 42 U.S.C. § 1983 be granted.

### b.  Count V for Breach of Contract under Pennsylvania Law

Likewise, because Plaintiff was an at will employee, he cannot establish a

legitimate expectation of continued employment, and consequently, cannot state a cause of action

under Pennsylvania law for breach of contract arising out of the termination of his employment.



[6]Plaintiff relies on Novosel v. Nationwide Ins. Co., 721 F.2d 894 (3d Cir. 1983) for his argument that the issue of whether "an employer's custom, practice or policy creates a contractual just cause requirement" should survive a motion to dismiss.  (Brief in Opposition to Motion to Dismiss, Doc. #13 at 18.)  Novosel, however, involved a private, rather than public, employee.  Moreover, the United States Court of Appeals for the Third Circuit has recently noted that it has "essentially limited Novosel to its facts – a firing [of a private employee] based on forced political speech."  Fraser v. Nationwide Mut. Ins. Co., 352 F.3d 107, 112-13 (3d Cir. 2004).

Therefore, it is respectfully recommended that Defendants' Motion to Dismiss Count V of Plaintiff's Amended Complaint for breach of contract be granted.

           c.  <u>Count VI for Violation of the Pennsylvania Local Agency Act</u>

In Count VI of the Amended Complaint, Plaintiff avers that the termination of his employment "is in violation of the Pennsylvania Local Agency Act, since the Defendants did not provide Plaintiff with any pre or post-termination hearing or due process of law." (Amended Complaint ¶ 71.) The Pennsylvania Local Agency Act, 2 Pa. Cons. Stat. § 551 et. seq. relates to "adjudications" of local agencies. Section 553 provides in relevant part that "[n]o adjudication of a local agency shall be valid as to any party unless he shall have been afforded reasonable notice of a hearing and an opportunity to be heard." 2 Pa. Cons. Stat. § 553. The term "adjudication" is defined, in relevant part, as "[a]ny final order, decree decision, determination or ruling by an agency affecting personal or property rights . . .." 2 Pa. Cons. Stat. § 101. The Pennsylvania Supreme Court has stated that "a local agency employee only has the right to a hearing pursuant to Local Agency Law where she can establish that her dismissal affected a personal or property right." <u>Short</u>, 696 A.2d at 1158. Consequently, because Plaintiff does not have a property interest in his employment, he was not entitled to the protections of The Local Agency Law.

Therefore, it is respectfully recommended that Defendants' Motion to Dismiss Count VI of Plaintiff's Amended Complaint for violation of The Pennsylvania Local Agency Act be granted.

23

d. <u>Count VII for Wrongful Discharge under Pennsylvania Law</u>

Defendants argue that because Plaintiff was an at-will employee, he can not make out a claim for wrongful discharge under Pennsylvania law and he can not demonstrate that his discharge violated public policy.  Plaintiff responds that a wrongful discharge claim can survive a motion to dismiss where termination of employment "abridges a significant and recognized public policy." (Brief in Opposition to Motion to Dismiss Amended Complaint, Doc. # 13 at 18.)  Further, Plaintiff argues that it is improper to dismiss Plaintiff's claims for wrongful discharge, breach of contract, and violation of the Local Agency Law before additional discovery is permitted and additional information regarding the employment relationship between Plaintiff and Defendants can be established.

Generally, a cause of action for wrongful discharge of an at-will employee does not exist under Pennsylvania law.  <u>McLaughlin v. Gastrointestinal Specialists, Inc.</u>, 750 A.2d 283, 287 (Pa. 2000); <u>see</u> <u>also</u> <u>Geary v. United States Steel Corp.</u>, 319 A.2d 174, 175 (Pa. 1974) ("[n]o court in this Commonwealth has ever recognized a non-statutory cause of action for an employer's termination of an at-will employment relationship.").  In dicta, however, the <u>Geary</u> court "left open the possibility of a wrongful discharge claim in circumstances where a termination of an employee would violate a 'clear mandate of public policy.'" <u>McLaughlin</u>, 750 A.2d at 286 (quoting <u>Geary</u>, 319 A.2d at 180).  In <u>McLaughlin</u>, the Pennsylvania Supreme Court held that an at-will employee may bring a wrongful discharge claim where the termination of the at-will employee would violate a "clear mandate of public policy."  <u>McLaughlin</u>, 750 A.2d at 286.  The <u>McLaughlin</u> court specifically stated that in averring such cause of action, an employee "must do more than show a possible violation of federal statute," but must show that some

specific public policy of the Commonwealth is implicated.  Id. at 289.  The public policy of this

Commonwealth has been declared by the Pennsylvania Supreme Court in "examining the

precedent within Pennsylvania, [its] Constitution, court decisions and statutes promulgated by

[its] legislature."  Id. at 288.  Actions will only proceed when public policy concerns of this

Commonwealth are clear.  Rothrock v. Rothrock Motor Sales, Inc., 810 A.2d 114, 118 (Pa.

Super. 2002).  In addition, these wrongful discharge plaintiffs must directly implicate a

Pennsylvania law, legal duty, or the exercise of a fundamental right.  See e.g., Schick v. Shirey,

716 A.2d 1231, 1237-38 (Pa. 1998) (employee terminated in retaliation for filing a workers'

compensation claim); Highhouse v. Avery Transp., 660 A.2d 1374 (Pa. Super. 1995) (employee

terminated for filing unemployment benefits claim); Reuther v. Fowler & Williams, Inc., 386

A.2d 119 (Pa. Super. 1978) (employee discharged for serving on a jury, a requirement under state

law).

        In Count VII of Plaintiff's Amended Complaint, Plaintiff avers in relevant part as

follows:

> 73.    Plaintiff believes and therefore avers that throughout the time of Plaintiff's
> employment with Defendant Airport Authority, Defendant Airport
> Authority adopted, maintained and implemented a policy and/or an
> employee Handbook and/or Manual which included just cause provisions
> regarding discipline and/or discharge.
>
> 74.    The termination of Plaintiffs[sic] employment by the Defendants, and each
> of them, constitutes a wrongful discharge under Pennsylvania law, the
> Americans with Disabilities Act, the First, Fifth, Ninth and Fourteenth
> Amendments to the United States Constitution and the Equal Protection
> Clause and the Privileges and Immunities Clause of Article IV of the
> United States Constitution, and 42 U.S.C. § 1983, in violation of public
> policy.

(Amended Complaint ¶¶ 73-74.)  Clearly, the averments of Count VII of the Amended

Complaint do not reflect public policy concerns of the Commonwealth of Pennsylvania.

_____Similarly, a thorough examination of all Paragraphs preceding Count VII and incorporated by reference, reveals no averments reflecting public policy concerns of the Commonwealth.  In fact, in Count V for breach of contract, Plaintiff avers that "Defendant Airport Authority has breached or violated his employment rights with Defendant Airport Authority, generally and for the following reasons: . . .C.  In terminating his employment in violation of public policy as set forth in Counts I, II, III, and IV."  (Amended Complaint ¶ 68.C.) A review of Counts I through IV reveal only Plaintiff's averments relating to his federal statutory claims under the Americans with Disabilities Act, and § 1983 invoking his rights under the United States Constitution, including Fourteenth Amendment Due Process, First and Fourteenth Amendment Rights of Political Association, and the Equal Protection clause, respectively.

_____Moreover, "Pennsylvania recognizes a cause of action for wrongful discharge 'only in the absence of a statutory remedy and only when important and well recognized facets of public policy [are] at stake.'" Darlington v. Gen. Elec., 504 A.2d 306, 318 (Pa. Super. 1986) (quoting Rettinger v. American Can Co., 574 F. Supp. 306, 311 (M.D. Pa. 1983)) and (citing Molush v. Orkin Exterminating Co., Inc., 547 F. Supp. 54 (E.D. Pa. 1982); Shaw v. Russell Trucking Line, Inc., 542 F. Supp. 776 (W.D. Pa. 1982)).  See also Bruffett v. Warner Communic'n, 692 F.2d 910, 919-20 (3d Cir. 1982); Jacques v. Akzo Int'l Salt, Inc., 619 A2d 748, 753 (Pa. Super. 1993); cited in, Radicke v. Fenton, 2001 WL 229936 * 4 (E.D. Pa. 2001). Further, it is the existence of the statutory remedy, and not whether the statutory remedy will ultimately be successful, that determines preemption.  Radicke, 2001 WL 229936 at *4 (citing Jacques, 619 A.2d at 753 and Bruffett, 692 F.2d at 919-20).

26

Here, Plaintiff has averred causes of action for various statutory remedies. Specifically, Plaintiff has invoked the protections of the Americans with Disabilities Act and The Civil Rights Act, 42 U.S.C. § 1983.[7]  Consequently, this Court should dismiss his claim for wrongful discharge under Pennsylvania law.[8]

Therefore, it is respectfully recommended that Defendants' Motion to Dismiss Count VII of Plaintiff's Amended Complaint be granted.

3.      Equal Protection

Count IV of the Amended Complaint, entitled "Equal Protection," states that "Defendants deprived Plaintiff of equal protection of the law without a rational basis for doing so" based upon Defendants' "refusal to accommodate his protected disability while doing so for other employees, similarly situated."  (Amended Complaint ¶¶ 60-61.)  Plaintiff continues that "[n]o rational basis exists for terminating Airport Authority employees because of their disability or alternatively because of their political affiliation and who they support as political candidates."

---

[7]      Although Pennsylvania courts have not directly held that remedies under § 1983 preempt the availability of common law action for wrongful discharge, the Pennsylvania Supreme Court has recognized, in dicta, that the availability of remedies for discrimination under federal statutes can preempt the availability of the wrongful discharge action. Radicke, 2001 WL 229936 *4 (citing Clay v. Advanced Computer Applications, 559 A.2d 917, 921 n.2 (Pa. 1989)).

[8]This Court will not address Defendants' arguments concerning the Political Subdivision Tort Claims Act as they were made in the alternative, that is, "if Plaintiff's allegations [were] sufficient to show that his discharge violated public policy."  (Brief in Support of Motion to Dismiss Amended Complaint, Doc. #10 at 16.)  This Court will address immunity issues if and when properly raised.

(Amended Complaint ¶ 62.)

        The Fourteenth Amendment to the United States Constitution provides in relevant part that no State shall "deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV, § 1.  The purpose of the Equal Protection clause "is to measure the validity of classifications created by state laws."  Parham v. Hughes, 441 U.S. 347, 358 (1979).  In this way, it serves to protect against intentional and arbitrary discrimination, whether brought about by the express terms of the statute in question, or by the improper application of the statute by actors of the State.  Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (quoting Sioux City Bridge Co. v. Dakota County, 260 U.S. 441, 445 (1923), and Sunday Lake Iron Co. v. Twp. of Wakefield, 247 U.S. 350, 352 (1918)).  That is, "the Equal Protection clause provides a basis for challenging legislative classifications that treat one group of persons differently than another group of similarly situated persons, and for contending that general rules are being applied in an arbitrary or discriminatory way."  Volk v. Heydt, 1997 WL 27100 *6 (E.D. Pa.) (citing Jones v. Helms, 452 U.S. 412 (1981) and Yick Wo v. Hopkins, 118 U.S. 356 (1886).  If a legislative classification does not burden a fundamental right nor target a suspect class, the legislative classification will be upheld if it bears a rational relationship to some legitimate end.  Vacco v. Quill, 521 U.S. 793, 800 (1997) (quoting Romer v. Evans, 517 U.S. 620, 631 (1996)).  A classification bears a rational relationship to some legitimate end if it classifies "the persons it affects in a manner rationally related to legitimate governmental objectives."  Murillo v. Bambrick, 681 F.2d 898, 905 (3d Cir. 1982) (quoting Schweiker v. Wilson, 450 U.S. 221, 230 (1981)).

        Here, Plaintiff's Amended Complaint complains of the actions of Defendants in

"terminating Airport Authority employees because of their disability or alternatively because of their political affiliation and who they support as political candidates." (Amended Complaint ¶ 62.) Plaintiff has not placed a legislative classification in issue. Consequently, Plaintiff cannot make out a claim for violation of the Equal Protection clause.

Therefore, it is recommended that Defendants' Motion to Dismiss Plaintiff's Equal Protection claim be granted.

4.    Ninth Amendment claim

Counts II, III, and VII of Plaintiff's Amended Complaint aver violations of the Ninth Amendment to the United States Constitution.

Defendants argue that the Ninth Amendment claims must be dismissed as the Ninth Amendment secures no substantive rights and cannot provide the basis for a § 1983 claim.

The Ninth Amendment to the United States Constitution provides: "The enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people." U.S. CONST. amend. IX. A § 1983 claim cannot be based solely on the Ninth Amendment as it is a "rule of interpretation rather than a source of rights." Froehlich v. Wisconsin Dep't of Corr., 196 F.3d 800, 801 (7th Cir. 1999); see also Hockenberry v. Village of Carrollton, 110 F. Supp.2d 597, 604 (N.D. Ohio 2000); Basile v. Elizabethtown Area S.D., 61 F. Supp.2d 392, 403 (E.D. Pa. 1999); Rini v. Zwirn, 886 F. Supp. 270, 289-90 (E.D.N.Y. 1995) (citing Schowengerdt v. United States, 944 F.2d 483, 490 (9th Cir. 1991); Gibson v. Matthews, 926 F.2d 532, 537 (6th Cir. 1991)). Instead, § 1983 claims must be based upon a specific guarantee of the United States Constitution. See Paul v. Davis, 424 U.S. 693,

700 (1976) (§ 1983 claim dismissed for failure to specify the specific constitutional guarantee allegedly infringed).  Because the Ninth Amendment does not protect any specific right but is regarded as a rule of construction, it cannot support a § 1983 cause of action.  Strandberg v. City of Helena, 791 F.2d 744, 748 (9th Cir. 1986); see generally, Laurence H. Tribe, American Constitutional Law, § 11-3, at 774-75 (2d ed. 1988) (Ninth Amendment is rule of construction). Finally, the Ninth Amendment has not been incorporated into the Due Process Clause of the Fourteenth Amendment, and consequently, has no application to these allegations involving only non-federal actors.  See Tribe, § 11-2, at 772-73.

Consequently, it is recommended that Defendants' Motion to Dismiss Plaintiff's Ninth Amendment claims be granted.

5.   Punitive Damages

Defendants argue that Plaintiff's claims for punitive damages should be dismissed because punitive damages are not available against government entities.  Specifically, Defendants note that Plaintiff averred in his Amended Complaint that Defendant Airport Authority is "a municipal authority organized and incorporated by Allegheny County pursuant to the laws of the Commonwealth of Pennsylvania . . .."  (Amended Complaint ¶ 8.)  In addition, Defendant argues that because Defendant Saracco's alleged participation in Plaintiff's termination occurred in her official capacity, "Plaintiff's claim for punitive damages against Saracco equates to a claim for punitive damages against the Airport Authority, and should likewise be dismissed."  (Brief in Support of Motion to Dismiss Amended Complaint, Doc. #10 at 21.)  In response, Plaintiff argues as follows:

30

> Similarly, the Defendants' arguments that punitive damages do not apply against Defendant Airport Authority are misplaced.  Defendant Airport Authority is not funded directly by the raising of taxes.  To the contrary, Defendant Airport Authority is a separate and freestanding authority whose revenue is generated primarily from the use of the facility, not tax revenue.  In addition, a plaintiff who, in the context of a constitutional deprivation under the First Amendment, especially where the public official should have known of the constitutionally protected rights and acted in conscious disregard of them to the detriment of Plaintiff, subjects themselves to the potential award of punitive damages.

(Brief in Opposition to Motion to Dismiss Amended Complaint, Doc. #13 at 17.) (no citations in original).

In City of Newport v. Fact Concerts, Inc., 453 U.S. 247 (1981), the United States Supreme Court held that § 1983 plaintiffs may not recover punitive damages against local governments.  Id. at 271.  First, the Court stated that the common law related to local government liability precluded punitive damages awards.  Id. at 259-63.  Further, noted the Court, the legislative history relating to § 1983 did not suggest that Congress intended to abolish local government immunity from punitive damages; instead, Congress was concerned about punishing taxpayers and bankrupting local governments if the imposition of punitive damages were permitted.  Id. at 263-66.

Next, the Court examined public policy concerns in conjunction with the objectives of punitive damages, and the purposes of § 1983.  Id at 266-71.  The Court noted that local governments themselves cannot act with malice, only their officials can.  Further, compensation and deterrence are the main purposes of § 1983, not punishment.  An award of compensatory damages against a local government provides sufficient deterrence while punitive damages against officials individually provides an effective means of deterrence.  Finally, the Court noted that the financial burden on local governments in the event of a punitive damages

31

award could be devastating and would create a serious risk to the financial integrity of local governments.  Id.

  The case law on punitive damages with regard to entities related to local governments is not nearly as clear.  The United States Court of Appeals for the Third Circuit, applying City of Newport, has held that the Southeastern Pennsylvania Transportation Authority ("SEPTA"), a regional transit authority created by the Commonwealth of Pennsylvania, is immune from punitive damages.  Bolden v. Southeastern Penn. Transp. Auth., 953 F.2d 807, 829-31 (3d Cir. 1991).  Specifically, the Court held as follows:

> SEPTA, of course, is not a governmental unit in the traditional sense, but it shares many characteristics with federal, state and local agencies.  SEPTA is perhaps best described as a hybrid entity with substantial connections to government at all levels – federal, state, and local.  While SEPTA's ties to state government are not close enough or exclusive enough to persuade us that SEPTA should be regarded as an alter ego of the Commonwealth for Eleventh Amendment purposes, SEPTA's ties to all levels of government taken together are sufficient to convince us that SEPTA may be analogized to a government entitiy for purposes of determining whether SEPTA should be liable for punitive damages.

Id. at 830.

  The Third Circuit in Bolden also evaluated the public policy concerns discussed in City of Newport and observed that "[a]warding punitive damages against SEPTA might result in increased taxes or fares and thus punish taxpayers and users of mass transportation who cannot be regarded, except perhaps in an indirect and abstract sense, as bearing any guilt for constitutional violations that SEPTA may commit."  Id. at 831.  See also Evans v. Port Auth. of New York and New Jersey, 273 F.3d 346, 357 n.7 (3d Cir. 2001) (City of Newport supplies applicable analysis in determining whether a public authority is immune from punitive damages under § 1983).

Here, Allegheny County Airport Authority is a "public entity established pursuant to the Municipality Authorities Act . . .." <u>Allegheny County Airport Auth. v. Constr. Gen. Laborers and Material Handlers Union, 1058</u>, 874 A.2d 1250, 1251 (Pa. Cmwth. 2005) (footnote omitted). <u>See</u> <u>also</u> 53 Pa. Con. Stat. Ann. §§ 5601-5623. The Municipality Authorities Act, 53 Pa. Con. Stat. Ann. § 5601-5623 defines "Authority" as follows: "'Authority.' A body politic and corporate created under this chapter; . . . known as the Municipality Authorities Act . . .." The Municipality Authorities Act also defines "Municipality" as follows: "'Municipality.' A county, city, town, borough, township or school district of the Commonwealth." 53 Pa. Con. Stat. Ann. § 5602. A "municipality" is not equivalent to an "authority" pursuant to the definitions contained in the Municipality Authorities Act. Consequently, in the context of this Motion to Dismiss, it is unclear whether the policy considerations discussed in <u>City of Newport</u> are, in fact, applicable here to these Defendants and whether the Allegheny County Airport Authority is, in fact, financially self-sustaining as argued by Plaintiff. <u>See</u> <u>City of Newport</u>, 453 U.S. at 266-71. Further, it is unclear whether a possible punitive damages award against Defendants would result in increased expenses to the public generally. <u>See</u> <u>Evans</u>, 273 F.3d at 357-58 (punitive damages award may increase tolls, fares and other expenses incurred by the public). Therefore, accepting as true all allegations in Plaintiff's Amended Complaint, and all reasonable inferences that can be drawn therefrom, and viewing them in the light most favorable to the Plaintiff, this Court cannot recommend that Plaintiff's claims for punitive damages be dismissed at this time.

Therefore, it is recommended that Defendants' Motion to Dismiss Plaintiff's claims for punitive damages be denied.

## III.   <u>CONCLUSION</u>

It is respectfully recommended that Defendants' Motion to Dismiss at Doc. No. 9 be granted in part and denied in part.  Specifically, it is recommended that Defendants' Motion to Dismiss Plaintiff's claims pursuant to the ADA and for punitive damages be denied.  Further, it is recommended that Defendants' Motion to Dismiss Plaintiff's claims pursuant to § 1983 for violation of the Fourteenth Amendment Due Process clause, breach of contract, violation of Pennsylvania Local Agency Act, wrongful discharge, the Equal Protection clause, and the Ninth Amendment be granted.  It is also respectfully recommended that Defendants' Motion to Dismiss at Doc. No. 9 relating to judicial estoppel be converted to a Motion for Summary Judgment and denied.

In accordance with the Magistrate's Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.1.4(B) of the Local Rules for Magistrates, the parties are allowed ten (10) days from the date of service to file objections to this Report and Recommendation.  Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto.  Failure to file timely objections may constitute a waiver of any appellate rights.


 /s/ Lisa Pupo Lenihan

LISA PUPO LENIHAN
United States Magistrate Judge


Dated: November 29, 2005

cc:     The Honorable David S. Cercone

United States District Judge


Falco A. Muscante
Petraglia & Muscante
304 Ross Street
7th Floor
Pittsburgh, PA 15219

John K. Gisleson
Sarah E. Diedrich
Schnader, Harrison, Segal & Lewis
120 Fifth Avenue
Suite 2700, Fifth Avenue Place
Pittsburgh, PA 15222-3001

Thomas P. McGinnis
Karin M. Romano
Thomas, Thomas & Hafer
One Oxford Center
301 Grant Street
Suite 1150
Pittsburgh, PA 15219